[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12660
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cv-00233-RV-EMT

MID-CONTINENT CASUALTY COMPANY,
A Foreign Corporation,
GREAT AMERICAN INSURANCE COMPANY,
A Foreign Corporation

Plaintiffs - Counter Defendants - Appellees,

versus

ADAMS HOMES OF NORTHWEST FLORIDA INC,
A Florida Corporation,

Defendant - Counter Claimant - Appellant,

JONILEA FOSTER BELL,
As a trustee of the Jonilea Foster Bell Revocable Trust, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(February 13, 2018)

Before MARTIN, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Mid-Continent Casualty Company and Great American Insurance Company (collectively, Mid-Continent), insurers, brought this action seeking a declaration that they owe no duty to defend and indemnify Adams Homes of Northwest Florida, Inc. (Adams), their insured, against a state court lawsuit filed by Alex R. Kish Revocable Trust, Diana J. Kish Revocable Trust, Jonilea Foster Bell Revocable Trust, Cynthia L. Abbott Revocable Trust, and Samuel A. Osborne (collectively, Homeowners).  The district court found no duty to defend and entered summary judgment in favor of Mid-Continent.  We reverse and remand.[1]

## I.  BACKGROUND

Homeowners own property in Driftwood Estates (Driftwood) in Walton County, Florida.  Driftwood is located in the northernmost portion of the Development of Regional Impact Plan for Sandestin Development (DRI), which was developed by Intrawest Sandestine Company L.L.C. (Intrawest).  During the application process, developers described the DRI as an integrated community in which residents would have common access to amenities including golf courses, restaurants, a marina, and shops.

After the Walton County Board of Commissioners approved the DRI, Intrawest shifted density from land located south of Driftwood to Driftwood's

---

[1] We review a district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Owen v. I.C. Sys., Inc.,* 629 F.3d 1263, 1270 (11th Cir. 2011).

interior portion.  The density shift was part of Intrawest's initiative to increase the value of Burnt Pines, an exclusive "gated community within a gated community" that Intrawest was marketing.

In 2004, Intrawest sold the interior portion of Driftwood to Olson & Associates of NW Florida (Olson), knowing Olson intended to build homes in areas originally designated for golf courses, holding ponds, and natural areas. Intrawest did not take reasonable steps to implement a workable drainage system although it knew or should have known shifting density would eliminate "vital and necessary" elements of the drainage plan Walton County had approved.

Olson, in turn, sold "certain portions of the interior property" of Driftwood to Adams, making Adams the "successor in interest to INTRAWEST."  Adams, like Olson, "built and sold homes in the interior of the Driftwood Development without regard for the design, construction and maintenance of an adequate drainage plan . . . ."  More specifically, Adams initiated construction in locations meant for retainage lakes under the original drainage plan, redirected historical water flow by elevating lots, and used "impervious muck and clay as fill," thereby "reduc[ing] the natural drainage capacity of the area."

As a result, Homeowners' "homes, the streets adjacent to their homes, and the common areas they have access to, are now prone to flooding,"  which has made "[Homeowners'] ordinary use or occupation of their property physically

3

uncomfortable" and "disturb[ed] the [Homeowners'] free use . . . of their

property."   Homeowners sued Adams in state court seeking damages for Adams'

alleged negligence in failing to ensure the installation of adequate drainage.

Mid-Continent insured Adams under commercial general liability policies

(Policies) for the periods August 1, 2003, through August 1, 2004, and August 1,

2004, through August 1, 2005.  Under the Policies, Mid-Continent has the "right

and duty to defend the insured against any 'suit'" seeking "damages because of

'bodily injury' or 'property damages'" covered thereunder.  The Policies define

"property damage" as:

   a. Physical injury to tangible property, including all resulting loss of use
     of that property.  All such loss of use shall be deemed to occur at the
     time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured.  All
     such loss of use shall be deemed to occur at the time of the
     'occurrence' that caused it.

In February 2009, Adams tendered a second amended complaint to Mid-

Continent.  Mid-Continent denied coverage in April 2009.  In August 2015,

Homeowners filed an eighth amended complaint, which Adams also tendered to

Mid-Continent.  Mid-Continent then began providing Adams a defense against the

Homeowners' suit, subject to a full reservation of rights.

In May 2016, Mid-Continent brought this action against Adams and

Homeowners.  In Count III, Mid-Continent sought a declaration that it had no duty

to defend Adams against the allegations in the second amended complaint.  Both

parties moved for summary judgment on Count III.  The district court granted Mid-

Continent's motion, holding Mid-Continent had no duty to defend Adams.  Adams

appealed.

## II.  ANALYSIS

Under Florida law, an insurer's duty to defend "depends solely on the

allegations in the complaint filed against the insured."  *Trizec Props., Inc. v.*

*Biltmore Const. Co.*, 767 F.2d 810, 811 (11th Cir. 1985) (quotation omitted).[2]  The

insurer must defend if the complaint alleges facts that "fairly and potentially bring

the suit within policy coverage."  *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State*

*Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993).  "If the allegations of

the complaint leave any doubt as to the duty to defend, the question must be

resolved in favor of the insured."  *Id.*

The district court focused on the Policies' first definition of "property

damage," which requires a "[p]hysical injury to tangible property."  *See, e.g.*, DE

42 at 9 ("[I]n none of the one hundred and forty-seven paragraphs [of the second

amended complaint] is it alleged that ADAMS did anything that physically

damaged [Homeowners'] homes.").  We need not decide whether the district court

was correct in concluding Homeowners failed to allege physical injury because, in

---

[2] It is undisputed that Florida law applies in this diversity action.

5

addition to "[p]hysical injury to tangible property," the Policy also covers "[l]oss of use of tangible property that is not physically injured."[3]

In *McCreary v. Florida Residential Property and Casualty Joint Underwriting Association*, Fran and Cain McCreary sued their insurance provider for refusing to defend them against a complaint by their neighbor, L. Anton Rebalko.  758 So. 2d 692, 693 (4th Dist. Ct. App. 1999).  Rebalko's complaint alleged that the McCrearys' failure to "control, supervise, and confine their dogs to their own premises" was an "ongoing clear and present danger to the health, safety and comfort of [Rebalko]" that ultimately rendered him "unsafe and insecure [] in the use and enjoyment of his own property."  *Id.* at 694.  The Fourth District Court of Appeals concluded "Rebalko's claim that the actions of the [McCrearys] 'ultimately renders unsafe and insecure [Rebalko] in the use and enjoyment of his own property,' when fairly read, creates a factual issue as to the loss of use of the property . . . ."  *Id.* at 695.

The same result is appropriate here.[4]  Adams "built and sold homes in the interior of the Driftwood Development without regard for . . . an adequate drainage

---

[3] We note that the district court did not cite this alternative definition of "property damage" in its Order.

[4] "Absent a clear decision from the Florida Supreme Court on this issue, 'we are bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently.'"  *Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1210 (11th Cir. 2012) (quoting *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002)).

plan . . . ."  More specifically, Adams initiated construction in locations meant for retainage lakes under the original drainage plan, redirected historical water flow by elevating lots, and used "impervious muck and clay as fill," thereby "reduc[ing] the natural drainage capacity of the area."  As a result, Homeowners' "homes, the streets adjacent to their homes, and the common areas they have access to, are now prone to flooding . . . ."  The flooding has made "[Homeowners'] ordinary use or occupation of their property physically uncomfortable" and "disturb[ed] the [Homeowners'] free use . . . of their property."

These allegations, fairly read, create a factual issue as to loss of use.  Mid-Continent contends water is relatively harmless, unlike the McCrearys' dogs, which entered Rebalko's property and "caus[ed] an immediate danger to [Rebalko] and his pets."  *McCreary*, 758 So. 2d at 694.  But the absence of allegations that the storm water run-off is placing Homeowners in immediate danger does not counsel a different result.  Physical discomfort in the use of property, like insecurity and unsafety in the use of property, raises the specter of loss of use.  Although it is unclear whether the physical discomfort caused by the run-off is severe enough to prevent Homeowners from using their property, the same was true of Rebalko's allegations in *McCreary*.  Rebalko did not allege he stopped using his property because of the McCrearys' dogs; rather, Rebalko alleged he felt insecure and unsafe in its use.  Like Rebalko, Homeowners are entitled to have any

7

ambiguity about whether the physical discomfort caused by the run-off was severe enough to cause loss of use resolved in their favor. "If the allegations of the complaint leave any doubt as to the duty to defend, the question must be resolved in favor of the insured." *Lime Tree Vill.Cmty.*, 980 F.2d at 1405.

The district court also held Mid-Continent had no duty to defend because the underlying complaint against Adams seeks only economic damages. The cases the district court cited in support of its conclusion are, in addition to being non-binding, distinguishable. In one, the plaintiff sought "coverage for all damages arising from or attributable to the property damage . . . ." *Pavarini Const. Co. v. Ace Am. Ins. Co. (Se) Inc.*, 161 F. Supp. 3d 1227, 1237 (S.D. Fla. 2015). In the other, the plaintiff sought coverage for claims that would have "exist[ed] regardless of the loss of the property . . . ." *Key Custom Homes, Inc. v. Mid-Continent Cas. Co.*, 450 F. Supp. 2d 1311, 1318 (M.D. Fla. 2006). Here, on the other hand, Homeowners brought tort claims against Adams seeking recovery for the loss of use of their property. We have not found any support for applying the principle that general-liability policies do not cover purely economic damages in a case like this one.[5] Therefore, the district court erred by holding the allegations in

---

[5] Mid-Continent also urges us to affirm because "the second amended complaint alleges that additional storm water run-off and other damages . . . did not occur until 2005," which is outside the period covered by the Policies. As this contention is given only a passing mention in a portion of the summary of the argument devoid of citation, it is waived. *Kelliher v. Veneman*, 313 F.3d 1270, 1274 n.3 (11th Cir. 2002) (stating that because the appellant "only mentioned his

the second amended complaint did not trigger Mid-Continent's duty to defend

Adams.

## III.  CONCLUSION

Because Mid-Continent had a duty to defend Adams in the underlying suit,

the judgment of the district court is **REVERSED** and this case is **REMANDED**

for further proceedings consistent with this opinion.

---

EEOC retaliation claim in the summary of the argument in his initial brief" and "made no arguments on the merits as to this issue, the issue is deemed waived").  We also note that, even had it been properly presented, the contention is unpersuasive.  The relevant allegations refer to "late 2004 or [] 2005."

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 13, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-12660-JJ
Case Style: Mid-Continent Casualty Compan, et al v. Adams Homes Of Northwest Flor
District Court Docket No: 3:16-cv-00233-RV-EMT

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellees.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tiffany A. Tucker, JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs