**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 29, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  19-12892-AA
Case Style:  Mid-Continent Casualty Co. v. Adams Homes of Northwest
District Court Docket No:  3:16-cv-00233-RV-EMT

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call T. L. Searcy, AA at (404) 335-6180.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

19-12892
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cv-00233-RV-EMT

MID-CONTINENT CASUALTY COMPANY,
a foreign corporation.
GREAT AMERICAN INSURANCE COMPANY,
a foreign corporation,

Plaintiffs-Counter Defendants
-Appellees,

versus

ADAMS HOMES OF NORTHWEST FLORIDA INC,
a Florida corporation,

Defendant-Counter Claimant
-Appellant,

JONILEA FOSTER BELL,
As a Trustee of the Jonilea Foster Bell Revocable Trust, et al.,

Defendants.
_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 29, 2020)

Before MARTIN, ROSENBAUM and BLACK, Circuit Judges:

PER CURIAM:

Adams Homes of Northwest Florida, Inc. (Adams) appeals the district court's final judgment awarding damages, appellate attorney's fees, costs, and interest to Adams in Mid-Continent Casualty Company's (Mid-Continent) declaratory judgment action.  Adams contends the district court erred in applying the insurance policy's deductible endorsement to damages awardable to Adams and erred in failing to award prejudgment interest on Adams' damages from the date Adams incurred defense costs.  After review,[1] we affirm the district court.

## I.  BACKGROUND

Mid-Continent brought this action seeking a declaration that they owed no duty to defend and indemnify Adams against a state court lawsuit filed by four homeowners (Homeowners' action).  The district court found no duty to defend and entered summary judgment in favor of Mid-Continent, but this Court reversed and remanded, holding Mid-Continent had a duty to defend Adams in the underlying suit.  *Mid-Continent Cas. Co. v. Adams Homes of Nw. Fla. Inc.*,  725 F. App'x 777 (11th Cir. 2018).

---

[1] We review the district court's interpretation of an insurance policy *de novo*.  *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008).

2

On remand, the district court scheduled an evidentiary hearing to determine the amount of damages awardable to Adams resulting from Mid-Continent's breach of the duty to defend, and the amount of attorney's fees awardable for the appeal.  Before the hearing, Mid-Continent filed a memorandum arguing it was entitled to a setoff for the policy deductible amounts against any damages it owed Adams for its defense of the Homeowners' action.  After an evidentiary hearing and briefing, the district court found Mid-Continent was entitled to a deductible setoff of $375,000 and awarded Adams a net award of $470,536 for appellate and trial fees.

The district court then accepted arguments from both parties related to the amounts Mid-Continent owed for prejudgment interest.  Adams argued interest should accrue from the date Adams first paid for its own defense, before any setoff could be applied to Mid-Continent.  Mid-Continent argued Adams was only entitled to prejudgment interest after Adams satisfied the applicable deductible of $375,000.  The district court entered final judgment reflecting the application of interest accruing from October 29, 2013, the date Adams had paid $375,000 in defense costs.

## II.  DISCUSSION

### A.  *Deductible*

Adams contends the district court erred in applying the deductible setoff because Mid-Continent never "incurred" the defense costs.  Rather, Adams argues the deductible does not apply to Adams' damages because these damages were the defense costs Adams paid to defend itself in the underlying action.

Determining whether the deductible amount is applicable to the damages awarded to Adams requires interpreting the deductible endorsement contained in the policy.  Adams' deductible was $100,000 per claim for property damage liability.[2]  In provision A, the endorsement states, "[o]ur obligation under the . . . Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts . . . applicable to such coverages."  In provision B, the endorsement provides that "[u]nder Property Damage Liability Coverage, [the deductible applies] to all damages and *allocated loss expenses* sustained by any one person because of 'property damage.'"  "Allocated loss expenses" are defined as "expenses incurred by the company in

---

[2] As the district court noted, "[f]our $100,000 deductibles is, obviously, $400,000.  But Adams settled the Abbott claim for $25,000 of its own money . . . *before* Mid-Continent began providing it a defense."  Mid-Continent argued that the $25,000 used to settle the Abbott claim did not eliminate the $100,000 deductible for that claim but rather reduced the deductible from $100,000 to $75,000.  It was unchallenged that by the time it settled the Abbott claim, Adams had incurred in excess of $400,000 in expenses providing a single defense to all four claims.  Thus, the relevant deductible number became $375,000, crediting Adams for the $25,000 it had paid to settle the Abbott claim.

defense or settlement of claims."  Provision C of the endorsement provides the terms of the insurance, including those with respect to Mid-Continent's right and duty to defend the insured against suits seeking damages, and Adams' duties in the event of an occurrence, claim, or suit "apply irrespective of the application of the deductible amount."  Finally, Provision D states Mid-Continent "may pay any part or all of the deducible amount to effect settlement of any claim or 'suit' and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us."

Because diversity is the basis for federal jurisdiction over this matter, Florida law governs the issues on appeal.  *See State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004).  We construe insurance contracts "according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage."  *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007).  "It is well-settled that the injured party in a breach of contract action is entitled to recover monetary damages that will put it in the same position it would have been had the other party not breached the contract."  *Capitol Envtl. Servs., Inc. v. Earth Tech, Inc.*, 25 So. 3d 593, 596 (Fla. 1st DCA 2009).

If we accepted any of Adams' various arguments[3] that the deductible should not apply, we would put Adams in a better position than had Mid-Continent not

---

[3] Adams argues the district court's application of the deductible setoff rewrote the

breached its duty to defend.  *See id.*  We reject those arguments as without merit

based on the plain meaning of the insurance contract.  Although Adams argues the

deductible does not apply because Mid-Continent did not "incur" the costs, this

Court held Mid-Continent was required to defend Adams in the Homeowners'

action.  *See Mid-Continent Cas. Co.*, 725 F. App'x at 782.  When Mid-Continent

was held to be required to defend Adams, Mid-Continent "incurred" the costs of

Adams' defense.  And the deductible endorsement plainly requires that Adams pay

a $100,000 per claim deductible.  As the district court stated, "requiring Mid-

Continent to ask Adams to pay money it has already paid, and then file a separate

lawsuit when Adams inevitably declines to do so, would be an inefficient use and

waste of attorney and judicial resources."  Requiring Mid-Continent to pay the full

amount of defense costs incurred, including Adams' deductible, would be punitive,

and "[p]unitive damages for breach of contract are barred by Florida law."  *See*

*John Brown Automation, Inc. v. Nobles*, 537 So. 2d 614, 617 (Fla. 2d DCA 1988).

We reject Adams' various arguments to retain its deductible, and affirm the district

court.

---

deductible endorsement into self-insurance, that even if Mid-Continent later incurred expenses once its "belatedly-retained counsel appeared in the Homeowners' action," it never incurred any expenses defending Adams against the Abbott claim which was settled before Mid-Continent appeared, and that Mid-Continent never pleaded for reimbursement of the deductible in the declaratory action nor did it bring a separate action to recover the deductible.  We conclude that none of these arguments results in Adams being awarded the deductible amount under the terms of the contract or Florida law.

B. *Prejudgment Interest*

Adams also contends the district court erred in ruling Adams was not entitled to interest on the first $375,000 it incurred in defense costs.  Because Mid-Continent, not Adams, had to pay the first dollar of defense costs, Adams argues Mid-Continent wrongfully deprived it of its property the moment Adams began making payments to defend the Homeowners' action.

Florida follows the "loss theory" of prejudgment interest—where the loss is the wrongful deprivation of a party's property, the party must be made whole from the date of the loss through an award of prejudgment interest.  *See Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985).

The district court did not err in awarding prejudgment interest beginning on October 29, 2013, the date Adams paid $375,000 of its own defense costs.  Although we agree that under the terms of the insurance contract Mid-Continent should have been paying for the defense from the first dollar, under the terms of the deductible endorsement, Mid-Continent was entitled to request reimbursement of the deductible for all damages and allocated loss expenses.  Thus, Adams would have had to reimburse the deductible during the litigation in any event, and the district court's award of prejudgment interest starting on the date Adams paid $375,000 is consistent with both the insurance contract and the loss theory.

## III.  CONCLUSION

The district court did not err in applying a $375,000 setoff amount to the damages award or in awarding prejudgment interest beginning the day Adams spent $375,000 in defense costs.

**AFFIRMED.**